◼  THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. MITCH YONKO, Appellant.— Judgment, Supreme Court, Bronx County, rendered April 26, 1971 (as amended, on resentence, April 28, 1971), after trial to the court without a jury, modified, on the law, the facts and in the exercise of discretion, to dismiss the first count of the indictment (sodomy, first degree; old Penal Law, § 690); and, further, to reduce the conviction on the second count (assault, second degree; old Penal Law, § 242, subd. 5) to assault, third degree (old Penal Law, § 244, subd. 1), and the sentence thereunder to one year in the penitentiary; and, further, to reduce the sentences under the third, fourth, fifth, and sixth counts to a maximum of five years' imprisonment on each count without fixing a minimum term, all such terms of imprisonment to be served concurrently with each other and with the term imposed under the second count, and with the term imposed under the eighth count; and otherwise affirmed. As is observed in the dissent, " This is indeed a most difficult case ", involving, as it does, conviction of a father, upon the evidence of his wife and children, of a series of indecent acts committed upon the children. While it is difficult, in the light of one's own subjective standards, to comprehend the conduct of the defendant-appellant father, or to appreciate the hesitation of the mother until a late date to bring about his prosecution, it is not impossible to do so when considering the vast divergences in cultural backgrounds which exist in our multi-layered society. The father is an admitted alcoholic or excessive drinker; it matters not which description is employed. The existence of this affliction is a most important consideration for, no matter how it may be denominated semantically, it is completely consonant with the lack of self-control evident in those who depart from ordinarily accepted standards of propriety. The milieu from which this family derived is not inconsistent with what most would regard as weird ideas of the privileges of a husband and father. We should also bear in mind that the cold record is never an adequate substitute for the immediate opportunity of the trier of the fact to form opinions of credibility. (See *People* v. *Regina,* 19 N Y 2d 65.) Nor does either *People* v. *Porcaro* (6 N Y 2d 248) or *People* v. *Oyola* (6 N Y 2d 259) have application here; the evidence in those cases came only from a 10-year-old, whereas here we have not only the testimony of older children, but that of the mother and two children of a neighbor. Nor does the dissent deal with defendant's strongest weapon at the trial against his wife: a completely unsubstantiated accusation of infidelity. This reckless tactic demonstrates not alone a defect in defendant's character but, by its very nature, indicates defendant's own lack of credibility, thus strengthening that of his wife. And it is never difficult to mount an attack on credibility by finding instances of inconsistency between a witness' testimony and other evidence in the recital of a course of dealing running over several years. As to the testi-

mony of the children themselves, there is nothing in either the direct or — more important — the cross-examination to justify any inference that they learned a story from their mother, and certainly none that their friends, the Brady children, were part of a horrible conspiracy directed against the father. The "deficiencies in the record" adverted to in the dissent do not consist of anything except items adduced to undermine the wife's credibility. That issue is all that is involved in this case, and this is the question with which we have "come to grips." Of course, there will be found specific incidents of bias on the part of the wife, and of fear on the part of the children, but that is precisely what might be expected of the victims of defendant's assaults and deviate practices. Once past a decision as to credibility of the prosecution's witnesses, no element of the crimes charged in the counts which we sustain is found to be lacking. In sum, the basis for the dissent's posttrial and second-hand assessment of credibility appears simply to be a natural reluctance to accept the fact that any father could have acted in the manner of this defendant, or that any mother could have allowed it to continue for a moment without going at once to the authorities. Accepting, as we do, the trial court's judgment on credibility, we do not, however, accord entirely with all of his conclusions. The evidence as to the first count, charging sodomy, first degree (old Penal Law, § 690), does not lead irresistibly to a finding that defendant's contact with his infant daughter was actually carnal, and therefore neither are the requirements of section 483-a (carnal abuse) satisfied. The age of the child, three and one-half months, precludes application of section 483 (impairing morals). The count must be dismissed. The second count, assault in the second degree, based on the same facts, must fall because of lack of proof of intent to commit that felony, and must be reduced to simple assault (§ 244, subd. 1), a misdemeanor, and the sentence reduced accordingly to one year. The charges against defendant being what they are, the imposition of minimums and consecutive terms would defeat the possibility of correction of defendant by rehabilitative training. Though there are different violations spelled out, defendant's acts constituted but one continuing crime and should be regarded as such. We have therefore modified to give the Parole Board the broadest possible discretion in dealing with defendant. Having so modified, we need not consider the dissent's discussion of the sentence imposed. Concur — Stevens, P. J., Markewich and Kupferman, JJ.; Murphy and Capozzoli, JJ., dissent in the following memorandum by Capozzoli, J.: This is indeed a most difficult case and we must, therefore, look to the quality and genuineness of proof and rely on whatever ability we may possess to weed out the unreliable evidence. After a thorough reading and study of the minutes of this trial, I am forced to the conclusion that the guilt of this defendant has not been demonstrated beyond a reasonable doubt. The bitterness on the part of defendant's wife, who will hereinafter be referred to as "Joanie", the main witness against the defendant, and the opportunity she had of influencing the children of the marriage who testified in this case, all of whom were under her complete control, stand out as red signals of danger to those who would evaluate the totality of the evidence to determine whether the defendant's guilt was proven beyond a reasonable doubt. The defendant is 32 years of age, has been married to his wife for about 12 years and has fathered their seven children. At no time, until the acrimony between the defendant and Joanie became very acute, was there ever any suggestion on the part of anyone that the defendant displayed any sexual perversity. In fact, the report of the psychiatric examination of the defendant indicates he is free of all psychosis and showed no sexual perversity. There is nothing in his history to suggest any sexual abnormality. It is highly significant that Joanie made no outcry or complaint to anyone, about what

she claims to have seen, for over two years from the time of the alleged occurrences. I cannot believe that any mother, witnessing the outrageous acts to which her children were allegedly being subjected, as testified to by her, would wait over two years to take any action to protect them. This is especially unbelievable because, during these two years Joanie had called the police about 10 times with reference to the fights which she had with her husband. In fact, because of injuries she received at the hands of the defendant, she also had him before the Family Court. Neither to the police, nor to the Family Court, did she utter one word as to what she claimed to have observed concerning the behavior of the defendant towards his children. This is a very important consideration when matched against the fact that the testimony in this case is simply contrary to human experience and highly improbable. It is well known that young children have colorful and very vivid imaginations and their testimony is not always trustworthy. Our Court of Appeals has warned that such testimony, as is present in this case, should be scrutinized and considered with great caution, especially when such great bitterness exists between husband and wife. (*People* v. *Porcaro,* 6 N Y 2d 248; *People* v. *Oyola,* 6 N Y 2d 259.) It is to be noted that it is difficult, from the record in this case, to tell what particular acts were committed and at what particular times. The dates are very indefinite and the acts themselves are not too well defined. This seriously impaired the ability of the defendant to prepare and present his defense, as he would have been able to do if the dates were clear and the acts defined. While the need of corroboration was disputed by the trial court, nevertheless attempts were made to corroborate the testimony of the children by Joanie and the Brady children. But it is difficult to tell whether the corroborating witnesses were speaking of the same dates and the same acts. I am not impressed by the argument of the District Attorney that the testimony of the wife and children is buttressed by the alleged impartial testimony of the Brady children. Their testimony is indeed very suspect. The record shows that they never discussed what they claimed to have seen with anyone for two years, not even their own father and mother. It was only after they visited with Joanie, on a Sunday evening, while the case was on trial, that they supposedly discussed with her the events which they remembered as having taken place over two years prior. And it is represented that, strictly on their own initiative, they decided then and there to write to the District Attorney concerning what they had observed. This is claimed to have been done without any prompting by anyone, although it is admitted that Joanie had told them that she was "having trouble in court" and they liked Joanie "a whole lot" and, quite fortuitously too, Joanie was the messenger who delivered these letters from the children to the District Attorney. The witness, Donna Brady, testified that, on one occasion only, she saw the defendant molest Sally. Her sister, Vicky, testified that she had seen the defendant molest Sally on about six occasions and she did not remember having seen the defendant touch any other child. It is significant that these alleged acts, testified to by the Brady sisters, were not charged in the indictment, because it was established at the trial that they took place during September or October of 1968 and the indictment fixes the time between December 1, 1968 and January 31, 1969. When counsel for the defendant moved to strike from the record all reference to the acts allegedly committed against Sally, the motion was denied, the court saying: "a view of the tenor of this case and the nature of the defense which is involved, the Court considers that the evidence offered has great probative value on the question of whether or not the incidents described by members of the Yonko family did, in fact, take place,

or were fabricated by them for some ulterior purpose, and in that connection, the Court will accept the testimony". Frankly, it is difficult to understand just exactly what the court had in mind. The District Attorney had admitted that the People did not adduce this proof in order to get a conviction on the count of the indictment relating to Sally. (5th count.) He said, at page 278 of the trial minutes: "The People aren't offering to get a conviction on the acts testified to by this witness, but in view of the dates that she said she observed these things, this would be merely further proof and substantiation of the dates alleged in the indictment." The People must prove the guilt of the accused as charged in the indictment and they should not be allowed to prove acts alleged to have taken place at times other than those specified in the indictment, except when the rules of evidence so permit. It is hornbook law that, if a defendant is charged with having done certain things to A, at a designated time, you cannot prove his guilt by showing that he did similar acts to B, at a different time. Since there is only one count in the indictment based on what defendant allegedly did to Sally, and since it was not the District Attorney's purpose to get a conviction based on the acts testified to by the Brady sisters, their testimony should not have been received at all. Such testimony bears no relevancy to the acts allegedly committed by the defendant on other complainants at other times and could not be corroborative of those acts. (People v. Allen, 282 N. Y. 511; People v. Hall, 260 App. Div. 901.) On September 25, 1969, Joanie, under the name of Mary Joan Yonko, appeared in the Criminal Court of the City of New York, County of Bronx, Part 1-A, and swore to a felony affidavit, which amongst other things, stated that, on or about September 11, 1969, the defendant subjected: "Paula Yonko aged 2 to sexual contact by putting his finger in her vagina and did also lay on top of her. Deponent states that the defendant did duplicate these acts with each of his daughters listed above". The other daughters listed were Sally Yonko, aged 5, Mary Yonko, aged 6, Ruby Yonko, aged 9 and Christina Yonko, aged 10. It is noteworthy that the charge made against the defendant under this complaint was "Sexual Abuse 130.65, Endangering Welfare of a Minor 260.10". Sometime after the execution of this complaint a hearing was held thereon on February 10, 1970, presided over by a Judge of the Criminal Court. Joanie testified at that hearing as to what she saw defendant do to the children. In substance she testified that she saw him touching the childrens' privates with his finger. Not one word about the defendant having used his mouth! By the time the trial was reached Joanie testified that not only did the defendant use his finger in the manner indicated, but also performed acts of sodomy by placing his mouth on Paula's private parts, who, at that time, was about two and one-half months old. She also testified that she saw the defendant touch and kiss the private parts of the then, five-year-old Mary and commit similar acts with Sally, who was four years old. However, the only sodomy count we find in the indictment is the one based on the alleged acts committed by the defendant on his then two and one-half month old daughter, Paula. That is the first count of the indictment. Then, as to Mary, Sally and Ruby, the indictment charges sexual abuse in the first degree, and as to Christina it charges endangering the welfare of a child. In the case of Ruby there are two counts of sexual abuse in the first degree, the sixth count based on the period "on or about and between August 1, 1969 and September 30, 1969" and the seventh count which charges acts committed "on or about and between January 1, 1969 and January 31, 1969". I find it difficult to understand why Joanie did not state, at Part 1-A of the Bronx Criminal Court, that she had observed the defendant placing his mouth on

the children's privates. Her failure to make that statement, at that time, and for the first time making it at the trial, is most suspicious. Let us examine the evidence concerning Ruby. Ruby testified at the trial that the defendant "goes on top of me one day *when I was sleeping*. When I woke up, he was on top of me and I was starting to cry." (Italics added.) On the same page we find: "Q. When you woke up, your father was on top of you? A. Yes." Now, let us compare this testimony with the testimony of Ruby on cross-examination, found on page 122 of the trial minutes: "Q. * * * Was any body else in the room when your father touched you? A. No. Q. It was just you and your father? A. Yes, I was on the bed. The Court: Were you awake or asleep? The Witness: *Awake*, watching television". (Italics added.) At page 123: "Q. * * * You had all your clothes on, didn't you? A. Yes. The Court: Did you have your clothes on or your pajamas? The Witness: My clothes. The Court: Your clothes? The Witness: Yes." It seems clear to me that there was only one act to which Ruby referred. I do not know why they have two counts in the indictment in her case. In fact, the trial court convicted the defendant under the sixth count and dismissed the seventh count. It is significant to note that, although this same witness, Ruby, testified at the hearing in the Criminal Court, there *was not one word from her concerning what is alleged to have been done to her by defendant*. Her testimony was confined solely to what she observed the defendant do to Paula, Mary and to Sally. Nowhere in that testimony was there any statement by her concerning any oral contact between defendant and the children, as was claimed at the trial. In her testimony at the hearing she said, over and over again, that there was contact only between the finger and the childrens' privates. At the trial Ruby added a little more to what she had testified to at the hearing, saying, so far as Sally was concerned, that the defendant kissed Sally on the cheek, lips, stomach and between the legs. As to Mary she testified that she only saw defendant kiss Mary on the cheek. As to Paula she testified that she saw defendant kiss her on the cheek, lips, stomach and between the legs. I cannot close my references to the trial minutes without calling attention to the unnecessary and unfortunate examination of the child, Sally, as a witness. This was a child between five and one-half and six years of age, being asked to testify in court concerning events which took place two years earlier, when she was about four years old. It is surprising that the prosecutor argued strongly in support of his application to swear this witness. The trial court properly said: "I don't think the Court can accept sworn testimony from a six year old as to her recollection when she was four." The meager evidence given by this child against this defendant is far from satisfactory, despite the use of unorthodox methods of getting her testimony on the record, e.g., whispering in the ear of the reporter, etc. Her testimony is marked with answers such as: "A. I forgot. * * * A. I forgot what he did to my sisters. * * * A. I'm trying to think, but I forgot. * * * A. I forgot what I was to say, but I'll think what I have to say." I could go on through this lengthy record and indicate many other inconsistencies, uncertainties, equivocations and the like. To do so would require many more pages. As to the count of sodomy first degree, based on the acts allegedly committed against Paula when she was two and one-half months old, it *must be remembered that, under section 691 of the old Penal Law, penetration was required*. (Also, see *People* v. *Spry*; 5 A D 2d 835.) Unfortunately, in announcing its decision in this case, the trial court held that penetration was not required and cited, in support of that conclusion, the case of *People* v. *Maggio* (16 A D 2d 820, revd. 13 N Y 2d 789). (Proceedings of March 2, 1971; p. 14.) That case,

however, simply does not bear on the question of penetration. It has to do with establishing the principle that both the active and passive parties to a sodomous act are equally responsible. One is made to wonder whether it would not have been advisable, in this case, to submit the children to medical examination. For, if the charges were true that this defendant continuously inserted his finger in the children of tender ages, (especially Paula, who was but two and one-half months old when the mother claims she first saw the defendant commit such act) then a physical examination of the children might have revealed a broken hymen. This would not necessarily implicate the defendant, but on "the other hand, if her hymen were found to have been intact, the child's entire testimony would have been discredited". (*People* v. *Porcaro*, 6 N Y 2d 248, 251, *supra*.) In the case at bar the testimony of Joanie also would have been discredited. Without going further, I am led inevitably to the conclusion that the guilt of this defendant has not been proven beyond a reasonable doubt. As was said in *People* v. *Dalrymple* (280 App. Div. 137, 139): "The defendant is charged with a serious and repulsive crime and he should not be found guilty without clear and reliable testimony." The testimony in this case falls far short of this standard and it is well to keep in mind the words of the court in *People* v. *Oyola* (*supra*, p. 264): "Our liberties are based upon the idea that it is better for some of the guilty to go free than for any who are innocent to be convicted." The majority has simply failed to come to grips with the deficiencies in the record, as indicated in this dissent. On the contrary, it simply relies on broad general statements, thus avoiding a discussion of the specific criticisms raised herein. Incidentally, while the defendant, not a model husband, engaged in some excessive drinking, the record certainly does not show that he is an "admitted" alcoholic. If speculation and generalization were in order as to what is behind the testimony of these children, attention should be directed to what the child, Christina, said at pages 186-187 of the trial minutes: "Q. Did you ask your mother why you were going to the Court? A. Yes. Q. Did your mother tell you? A. She said because he might come out of jail and he might kill us. ° ° ° Q. That's what your mother said to you? A. Yes, my mother said it. Q. Did you ask your mother why he would come out of jail and kill you and kill her? Mr. Goldstone: Objection. A. No." The majority's observation that this dissent has not dealt with the so-called "unsubstantiated accusation of infidelity" does not help it in its conclusion. The important thing to bear in mind is that there was bitter acrimony between this defendant and his wife, without regard to its origin and this is the bitterness which compels a careful review of this record (*People* v. *Porcaro*, 6 N Y 2d 248, *supra*; *People* v. *Oyola*, 6 N Y 2d 259, *supra*.) Finally, it must be noted that the trial court sentenced this defendant to a cumulative term of not less than 14⅓, nor more than 38 years' imprisonment. However, minimum sentences cannot be imposed consecutively (Penal Law, § 70.30, subd. 1, par. [b]) and, therefore, the minimum should have been 7⅓ years and the maximum 32 years, if all the convictions remained unaffected. In reaching my conclusion I have not overlooked the fact that the trial court had the witnesses before it and was in a position to observe them. Nevertheless, this does not, in my opinion, make the record any more convincing. In view of the foregoing I would dismiss the indictment.