**Nathaniel T. GRADY, Sr., Petitioner,**

v.

**Christopher P. ARTUZ, Superintendent, Green Haven Correctional Facility, Respondent.**

**No. 94 Civ. 7362 (JGK).**

United States District Court, S.D. New York.

June 24, 1996.

Joel B. Rudin, New York City, for Petitioner.

Robert T. Johnson, District Attorney, Bronx County by Susan L. Valle, Assistant District Attorney, New York City, for Respondent.

## OPINION AND ORDER

KOELTL, District Judge:

Reverend Nathaniel T. Grady petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 based on an alleged violation of his Sixth Amendment right to the effective assistance of appellate counsel. The petitioner argues that his counsel's failure to raise on direct appeal the claim that the indictment was duplicitous constituted unconstitutionally ineffective assistance of counsel. A count of an indictment is duplicitous under New York law if it charges more than one offense.

## I.

The relevant factual circumstances relating to Grady's prosecution based on the trial record and the procedural history of Grady's trial, appeal, and collateral proceedings are as follows.

### A.

In early Autumn 1983, Reverend Nathaniel T. Grady, Sr., then forty-six years old, was assigned to be the minister of the Westchester United Methodist Church. The Church leased part of its space to the Westchester–Tremont Community Day Care Center in the Bronx, New York City. Grady's job responsibilities included supervision of repairs at the day care center, and starting in December 1983 Grady occupied an office at the day care center adjacent to a classroom for three-year-olds. At the end of March 1984, Grady began building a closet in the classroom for the children to store the cots they used during nap time. Grady was in the classroom working on the closet on a daily basis during the first week of April 1984.

In late April 1984, one of the children at the day care center reported to his mother that he had experienced sexual contact between himself and an adult male. An investigation ensued, conducted by the New York City Police Department and the Federal Bureau of Investigation ("FBI"). Law enforcement officials interviewed children and parents, teachers at the day care center, and Reverend Grady. The FBI conducted thirty days of video surveillance of the classroom and other areas within the day care center, although no evidence of sexual misconduct or abuse was discovered from the surveillance. The investigation revealed evidence of sexual abuse committed against six children, all approximately three years old at the time, usually occurring during nap time at the day care center. The evidence included accounts by the children of their own abuse, descriptions by children of abuse they witnessed perpetrated against other children, statements by the children's parents as to both physical symptoms exhibited by their children and the episodes of abuse their children had related to them, and physiological evidence gathered by a pediatrician and found to be consistent with sexual contact. No teacher or other adult witness testified that they witnessed any of the acts of abuse related by the children.

The Bronx District Attorney initiated the prosecution against Grady on October 9, 1984, when a Grand Jury in Bronx County returned a forty-two count indictment charging Grady with rape, sodomy, and sexual abuse of six children at the day care center over a one- or two-month period earlier in 1984. Grady was tried in New York State Supreme Court, Bronx County from November 1985 through January 1986. The children testified at trial, as did their parents and teachers. In addition to medical evidence, the People submitted the expert testimony of Eileen Treacy on the subject of certain behavioral and psychological symptoms exhibited by victims of child abuse. Reverend Grady testified in his own defense, denying outright all of the charges and insisting he had never interacted with any of the children at the child care center without a teacher present. The defense also offered its own expert witness on child sexual abuse, as well as numerous character witnesses.

### B.

On January 20, 1986, after one week of deliberations, the jury convicted Grady on nineteen counts of rape, sodomy, and sexual abuse against five children ranging in age from three to four years old. Justice Bernard J. Fried sentenced Grady on May 1, 1986 to an indeterminate aggregate prison term of fifteen to forty-five years. Grady retained new counsel, ("Appellate Counsel"), to represent him on direct appeal from the conviction. Appellate Counsel prepared an extensive brief presenting six grounds for appeal and reviewing the 5,500 page trial record in detail. Nonetheless, Grady's conviction was affirmed by the Appellate Division, First Department without opinion, *People v. Grady*, 125 A.D.2d 1011, 508 N.Y.S.2d 359 (1st Dep't 1986), and leave to appeal to the Court of Appeals was denied. *People v. Grady*, 69 N.Y.2d 880, 515 N.Y.S.2d 1028, 507 N.E.2d 1098 (1987).

Collateral proceedings began with a petition for a writ of habeas corpus brought in

this Court pursuant to 28 U.S.C. § 2254. The petition set forth three claims for relief, although no error based on duplicity of the indictment or failure to pursue such a claim on direct appeal was included. The petition was denied on the merits by Judge Whitman Knapp. *Grady v. LeFevre,* No. 87 Civ. 4983 (S.D.N.Y. Dec. 4, 1987). That denial was vacated and remanded with instructions to dismiss the petition by the Court of Appeals for the Second Circuit, *Grady v. LeFevre,* 846 F.2d 862 (2d Cir.1988), based on Grady's failure to exhaust all of his state remedies with respect to two of the claims raised in the petition brought before Judge Knapp.

Grady then submitted a petition for a writ of habeas corpus in New York State Supreme Court, Clinton County, in a proceeding under N.Y.Crim.Proc.L. ("CPL") art. 70 asserting the same claims that were set forth in the earlier federal habeas petition. The Article 70 petition was denied on procedural grounds on January 6, 1989, affirmed by the Appellate Division, Third Department, *People ex rel. Grady v. LeFevre,* 152 A.D.2d 850, 544 N.Y.S.2d 61 (3d Dep't 1989), and leave to appeal was denied. *People ex rel. Grady v. LeFevre,* 75 N.Y.2d 702, 552 N.Y.S.2d 108, 551 N.E.2d 601 (1990).

Grady again retained new counsel and moved before Justice Fried to vacate the conviction pursuant to CPL § 440.10. The basis of this motion was the duplicity of the indictment. The court found that Grady's failure to pursue and thereby preserve the duplicity issue on direct appeal was "unjustifiable" and therefore the motion was denied. *People v. Grady,* N.Y.L.J., Apr. 16, 1991, at 24 (N.Y.Sup.Ct., Bronx Co. Apr. 16, 1991). Grady appealed Justice Fried's decision and petitioned the Appellate Division for a writ of error coram nobis on the ground of ineffective assistance of Appellate Counsel for failing to have raised the duplicity issue on direct appeal. Both the appeal and the petition were denied by summary order, *People v. Grady,* 175 A.D.2d 980, 573 N.Y.S.2d 407 (1st Dep't 1991), and application for leave to appeal was dismissed for lack of jurisdiction. *People v. Grady,* 78 N.Y.2d 1127, 578 N.Y.S.2d 885, 586 N.E.2d 68 (1991).

Grady then filed this second petition for a writ of habeas corpus asserting a single claim based on his former Appellate Counsel's failure to have raised on direct appeal the issue of the duplicity of the indictment. Grady argues that his former counsel elected to omit the duplicity issue from the direct appeal to the Appellate Division, First Department, choosing instead to present a host of far less promising arguments. After the direct appeal was fully submitted to the Appellate Division but before a decision was issued, the New York Court of Appeals had issued its decision in *People v. Keindl,* 68 N.Y.2d 410, 509 N.Y.S.2d 790, 502 N.E.2d 577 (1986), relating directly to the issue of duplicity. Grady argues that Appellate Counsel refused to bring this intervening authority to the attention of the Appellate Division, even after Grady asked him whether the new decision was helpful to his appeal. Grady also complains that Appellate Counsel declined to mention the intervening case or the duplicity argument in general to the New York Court of Appeals in Grady's request for leave to appeal to the Court of Appeals. Grady argues that he was not afforded effective assistance of Appellate Counsel because of his lawyer's disregard for the duplicity argument.

This claim of ineffective assistance of Appellate Counsel was not presented in Grady's first § 2254 petition before Judge Knapp, nor was it included in the subsequent article 70 habeas petition in the New York State Supreme Court. Accordingly, the Respondent challenges this petition as an abuse of the writ. The Respondent also argues that the issue of ineffective assistance of Appellate Counsel on the basis of duplicity of the indictment is unexhausted because Grady asserts new facts not previously presented in any proceeding in state court. Finally, the Respondent argues that Grady's claim of ineffective assistance of Appellate Counsel fails on the merits.

After considering the extensive submissions, the Court finds that Grady's petition is not an abuse of the writ and presents a claim for which Grady has properly exhausted his state remedies. On the merits of the petition, the Court finds that Grady was de-

prived of the effective assistance of Appellate Counsel because of his former lawyer's failure to raise the duplicity of the indictment on direct appeal. Accordingly, Grady is entitled to a new appeal from his conviction, and, as explained fully below, the petition for a writ of habeas corpus is conditionally granted.[1]

## II.

Before reaching the merits, there are two procedural arguments raised by the Respondent. The first obstacle Grady must overcome is his failure to have raised his ineffective assistance of Appellate Counsel argument in his first petition for habeas relief before Judge Knapp. The Respondent argues that the present petition is an abuse of the writ because of this failure.

In *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), the Supreme Court set out the standard for determining whether a petitioner has abused the writ of habeas corpus. The Court held that a petitioner who raises a new claim in a subsequent petition that could have been raised in the first is subject to having the petition dismissed pursuant to Rule 9(b) of the Rules Governing Habeas Corpus Proceedings. *Id.*, 499 U.S. at 493–96, 111 S.Ct. at 1469–71. The Court further held that the cause and prejudice test derived from *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) should be applied to determine whether a subsequent petition is abusive. *Id.*, 499 U.S. at 493, 111 S.Ct. at 1469–70. If the petitioner cannot demonstrate cause and prejudice, or a fundamental miscarriage of justice, the new claim should be dismissed without addressing its merits.

*Id.* See *Sawyer v. Whitley*, 505 U.S. 333, 338, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992); *Gayle v. Mann*, 966 F.2d 81, 83–84 (2d Cir.1992).

It is the respondent who must plead abuse of the writ under Rule 9(b) and *McCleskey* by setting forth with particularity the petitioner's history of applications for habeas relief. Rule 9(b) provides:

> (b) *Successive petitions.* A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

In this case the Respondent argues that Grady's petition is abusive[2] because it contains a claim excluded from Grady's first § 2254 petition which was brought before Judge Knapp in 1987. Although Judge Knapp denied that petition on the merits, the Court of Appeals for the Second Circuit vacated that determination and remanded to Judge Knapp with instructions to dismiss the petition for failure to exhaust state remedies. Thus, even if Grady had included a claim for ineffective assistance of appellate counsel, it could not have been decided on the first habeas corpus petition in this Court. The Respondent maintains that the abuse of the writ doctrine applies to this second petition notwithstanding the fact that Judge Knapp's decision on the merits of the first petition was vacated.

**1.** This petition was filed October 12, 1994, and the matter was fully submitted following oral argument in July 1995. Consequently, neither party complied with or relied upon any provision of the recently enacted amendments to 28 U.S.C. § 2254 contained in the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996). The 1996 amendments were enacted long after this petition was filed, briefed and argued, and the new provisions do not apply explicitly to a petition such as this one which was filed before enactment. Furthermore, the 1996 amendments do not provide an effective date for the new provisions governing § 2254 petitions which might apply in this case. This Court agrees with Chief

Judge Aspen who decided, in a petition brought under § 2255, that the new amendment is not retroactive apart from certain provisions involving capital cases where retroactivity is explicitly provided. See *United States v. Trevino*, No. 96 C 828, 1996 WL 252570, at *2 n. 1 (N.D.Ill. May 10, 1996).

**2.** In the terminology of habeas petitions, a "successive" petition is one that only includes claims already asserted in a prior petition, while an "abusive" petition includes new claims that were not asserted in an earlier petition. See *Schlup v. Delo*, —— U.S. ——, —— n. 34, 115 S.Ct. 851, 863 n. 34, 130 L.Ed.2d 808 (1995).

## A.

Although Rule 9(b) is unclear on its face with respect to whether the merits of the prior petition must be reached, the statute to which the rule applies is more instructive. Section 2244(b) of Title 28 provides, in relevant part:

> When after an evidentiary *hearing on the merits* of a material factual issue, or after a *hearing on the merits* of an issue of law … a subsequent application for a writ of habeas corpus on behalf of such person need not be entertained … unless the application alleges and is predicated on a factual or other ground not adjudicated *in the hearing of the earlier application* for the writ, and unless the court … is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ.

28 U.S.C. § 2244(b) (emphasis added).[3]

██ It would be awkward to read "hearing of the earlier application" to include a hearing where the merits of a prior petition were not reached and the petition was dismissed for failure to exhaust state remedies on all of the claims. Both of the earlier references to a hearing in § 2244(b) are modified by "on the merits" with respect to both factual and legal issues. Indeed, the operation of this section of the statute is conditioned on such a hearing because it is after such a hearing that a subsequent petition "need not be entertained." The only reasonable construction of the statute is one that limits abuse of the writ to petitions asserting new grounds not asserted in an earlier petition which was decided on the merits. Based on this interpretation, the Respondent's argument that Grady's second petition is abusive must fail because the merits of his first petition were never finally determined.

There is no authoritative holding on this issue by the Supreme Court. In *McCleskey* the issue did not arise because the earlier petition had been denied on the merits. *See McCleskey*, 499 U.S. at 473, 111 S.Ct. at 1459.

Nor does *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), which requires the dismissal of petitions that include both exhausted and unexhausted claims, decide the issue. Three Justices did comment, however, on whether unexhausted claims included in the first petition were subject to dismissal for abuse of the writ if dropped and brought in a second petition after being exhausted. Justice O'Connor believed that a petitioner who dropped his unexhausted claims in order to avoid the total-exhaustion bar erected by *Rose* was subject to abuse of the writ dismissal if he resurrected those claims in a second petition after exhausting them in state court. *See Rose*, 455 U.S. at 520–21, 102 S.Ct. at 1204–05 (O'Connor, J., for a plurality). Justices Brennan and Marshall disagreed, arguing that such a petitioner could not be said to have abandoned the unexhausted claims in his first petition when it was the holding in *Rose* that compelled him to do so to obtain a swift dismissal of his exhausted claims. *See id.*, 455 U.S. at 536–37, 102 S.Ct. at 1212–13 (Brennan, J., concurring in part and dissenting in part). Justice White agreed with this position. *See id.*, 455 U.S. at 538, 102 S.Ct. at 1213–14 (White, J., concurring in part and dissenting in part). Moreover, and more to the issue relevant to Grady's petition, Justice Brennan explained that even a petitioner who elected not to press forward on his first petition by dropping unexhausted claims, and rather allows that petition to be dismissed as mixed, may still return again after exhausting his claims without being subject to abuse of the writ. Justice Brennan explained that:

> I conclude that when a prisoner's original, "mixed" habeas petition is dismissed without any examination of its claims on the merits, and when the prisoner later brings a second petition based on the previously unexhausted claims that had earlier been refused a hearing, then the remedy of dismissal for "abuse of the writ" cannot be employed against that second petition, absent unusual factual circumstances truly suggesting abuse.

3. Section 2244(b) was substantially amended by Section 105 of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996).

*Id.,* 455 U.S. at 537–38, 102 S.Ct. at 1213 (Brennan, J., concurring in part and dissenting in part).

The Court of Appeals for the Fifth Circuit, in an *en banc* decision by Judge Higginbotham, interpreted Justice Brennan's concurrence as authoritative on this point:

> [*Rose*] made plain that assertion of the unexhausted claims necessitates dismissal of the mixed petition and that dismissal of a mixed petition does not create a hurdle of writ abuse on petitioner's return.

*Jones v. Estelle,* 722 F.2d 159, 168 (5th Cir. 1983) (en banc). *See Herbst v. Scott,* 42 F.3d 902, 905 (5th Cir.1995) ("Since the district court that heard [petitioner's] first federal habeas petition decided it on the merits, 28 U.S.C. § 2254 Rule 9(b) applies to his second petition. If the second petition presents new grounds that were not alleged in the first petition, the Government may plead abuse of the writ.").

■ While the Court of Appeals for the Second Circuit has yet to address this question, several decisions by district courts in this circuit have concluded that a petition which follows an earlier dismissal for failure to exhaust is not subject to challenge for abuse of the writ. *See, e.g., Bacchus v. New York,* Nos. CV–93–1247, CV–94–3073, 1995 WL 62599, at *3 n. 7 (E.D.N.Y. Feb. 8, 1995) (Trager, J.) ("As neither of petitioner's two prior petitions were dismissed with prejudice, the third petition is not truly 'successive', and the abuse of writ doctrine is not applicable."). Furthermore, where a second petition asserts entirely new grounds for relief, it may not be attacked as abusive if the prior petition was dismissed without prejudice as a mixed petition. *See Abdul–Matiyn v. Mitchell,* No. 92 Civ. 6654, 1993 WL 307806, at *1 (S.D.N.Y. Aug. 10, 1993) (Buchwald, M.J.) (denying motion to dismiss third petition raising three new claims based on abuse of the writ where first two petitions were dismissed as mixed because § 2244(b) requires determination on the merits); *Spruill v. Scully,* No. 90 Civ. 5342, 1993 WL 307778, at *8 (S.D.N.Y. Aug. 9, 1993) (Ward, J.) (holding that "second prong of Rule 9(b) also requires a prior determination on the merits before a subsequent habeas petition

can be dismissed on abuse of the writ grounds[,]" and affirming Magistrate Judge Lee's finding that "an abuse of the writ inquiry would be inappropriate in this case").

In fact, a case on which the Respondent relies, *Woods v. Whitley,* 933 F.2d 321, 322 n. 1 (5th Cir.1991), noted that "[b]ecause the federal district court dismissed [the petitioner's] first habeas petition without prejudice, we disregard it for purposes of abuse of the writ analysis." Another case on which the Respondent relies, *Robinson v. Abrams,* No. 91 Civ. 3226, 1991 WL 102495 (S.D.N.Y. June 6, 1991) (Sweet, J.), did dismiss a second petition asserting new claims as abuse of the writ. But in that case, the first petition had been denied on the merits. *See Robinson v. Scully,* 683 F.Supp. 941 (S.D.N.Y.1988) (Sweet, J.).

The Respondent relies principally on *Holmes v. Bartlett,* 810 F.Supp. 550 (S.D.N.Y.1993) (Edelstein, J.), where a third petition asserting a claim for habeas relief not asserted in either of the two previous petitions was dismissed as abusive notwithstanding that both of the earlier petitions had been dismissed without prejudice for failure to exhaust state remedies. *See id.,* 810 F.Supp. at 558–59. Judge Edelstein also dismissed these claims on their merits as an alternative holding. *See id.,* 810 F.Supp. at 560–61. Grady acknowledges *Holmes* but distinguishes it by pointing out that the petitioner in that case had failed to raise the claims at issue in two prior proceedings rather than one. The fact that the petitioner brought a third petition may be an unusual factual circumstance suggesting abuse of the sort alluded to by Justice Brennan in *Rose*— although that specific analysis was not raised or discussed in *Holmes.*

■ In any event, the weight of authority discussed above, together with the language of § 2244 itself, establishes that an earlier mixed petition dismissed without prejudice for failure to exhaust state remedies is irrelevant for purposes of abuse of the writ. Whether a claim was raised in a prior mixed petition or not, it is only after a petition has been reviewed on its merits that the doctrine applies at all. Absent some unusual circumstances, it makes no difference that a claim

subsequently asserted was not asserted in the first mixed petition because it could not have been considered on the merits of that petition in any event.

■ Therefore, the Court agrees with those courts that have held abuse of the writ is not applicable to a new claim where a prior habeas petition in which the new claim was not included was dismissed without prejudice as a mixed petition under *Rose*. In this case, although Grady's first petition was initially denied on the merits by Judge Knapp, that disposition was vacated by the Court of Appeals and the petition was subsequently dismissed for failure to exhaust in accordance with that court's instructions. Therefore, there was no decision on the merits of Grady's first petition. Accordingly, the petitioner's claim based on ineffective assistance of Appellate Counsel, although not included in his first petition, is not subject to challenge as an abuse of the writ, and therefore review of that claim in the present petition is proper.

### B.

■ Alternatively, even if Grady's petition is subject to challenge as an abuse of the writ, Grady has demonstrated both cause and prejudice for not having raised the claim for ineffective assistance of appellate counsel in his first petition. Under *McCleskey*, to establish cause for failure to raise a claim in a prior petition, the petitioner must show that the failure stemmed from some "external impediment whether it be government interference or the reasonable unavailability of the factual basis for the claim." *McCleskey*, 499 U.S. at 497, 111 S.Ct. at 1472 (adopting "cause and prejudice" test from *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) for overcoming abuse of the writ). Grady points out that Appellate Counsel was still representing him at the time of his first petition for a writ of habeas corpus in federal court. Grady argues that Appellate Counsel could not have been expected to raise his own ineffectiveness as an issue in the first petition. Grady maintains that Appellate Counsel's self-interest is an external impediment that constitutes sufficient cause for the failure to have presented

the ineffectiveness of Appellate Counsel claim in the prior petition.

Respondent interprets Grady's argument to be a claim that Appellate Counsel provided ineffective assistance of counsel because he did not argue his own ineffectiveness in Grady's first habeas petition. The Respondent argues that because there is no constitutional right to counsel on a habeas petition, the ineffectiveness of that counsel does not constitute cause for failing to present a claim, relying on *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Ritchie v. Eberhart*, 11 F.3d 587 (6th Cir. 1993), *cert. denied*, 510 U.S. 1135, 114 S.Ct. 1111, 127 L.Ed.2d 422 (1994); *Johnson v. Hargett*, 978 F.2d 855, 859 (5th Cir.1992), *cert. denied*, 507 U.S. 1007, 113 S.Ct. 1652, 123 L.Ed.2d 272 (1993); *Harris v. Vasquez*, 949 F.2d 1497, 1514 (9th Cir.1991), *cert. denied*, 503 U.S. 910, 112 S.Ct. 1275, 117 L.Ed.2d 501 (1992). But this response does not address Grady's contention that this particular habeas counsel had a unique reason not to raise a claim of ineffective assistance of counsel—namely, he would be arguing that it was his own legal performance that was deficient. Grady argues that Appellate Counsel could not be expected to have raised an argument based on his own ineffectiveness and that this particular disability constitutes "cause" for not raising the claim in the first petition.

Grady's position is persuasive and has solid support in the case law of this circuit and others. In *Ciak v. United States*, 59 F.3d 296 (2d Cir.1995), the Court of Appeals for the Second Circuit held that the failure by trial counsel to raise his own ineffectiveness on direct appeal would excuse a procedural default on the claim of ineffective assistance of trial counsel claim, thereby allowing the petitioner to assert that claim in his petition brought under 28 U.S.C. § 2255. *Id.*, 59 F.3d at 303–04. The court explained that such a failure would constitute "cause" under *Wainwright v. Sykes*:

> We also find that the *Wainwright* procedural default rules do not bar this petition because petitioner was represented by the same counsel at trial and on appeal.... We cannot expect ineffective assistance

claims to be raised on direct appeal—and therefore we should not penalize a petitioner for failing to raise them—when a petitioner's counsel on direct appeal also represented him at trial. It is the rare attorney who can be expected to contend on appeal that his representation was so poor that he deprived his client of a fair trial. *Ciak*, 59 F.3d at 303. *Ciak* relied squarely on *Billy–Eko v. United States*, 8 F.3d 111, 114–16 (2d Cir.1993), which held that the procedural default rules that traditionally bar prisoners from raising issues for the first time in § 2255 proceedings do not apply to claims for ineffective assistance of counsel where a petitioner was represented by the same attorney at trial and on direct appeal or where such claims depend on matters outside the record from the petitioner's trial and direct appeal. In *Billy–Eko*, the Court of Appeals noted that a defendant is often represented by the same counsel at trial and on direct appeal, and therefore "it would be unrealistic to expect that trial counsel would be eager to pursue an ineffective assistance claim." *Id.*, 8 F.3d at 114. *See also Williams v. Lockhart*, 862 F.2d 155, 157 n. 4 (8th Cir.1988) (noting that district court held " '[quite] obviously, the petitioner should not, and will not, be charged with the failure to raise this ground [of ineffective assistance of trial counsel] in his first petition because counsel would not attempt to challenge his own competency in a habeas proceeding.' " (quoting *Williams v. Lockhart*, No. PB–C–86–200, slip op. at 11 (E.D.Ark. Aug. 20, 1986))), *cert. denied after remand*, 502 U.S. 874, 112 S.Ct. 213, 116 L.Ed.2d 171 (1991); *Stephens v. Kemp*, 846 F.2d 642, 651 (11th Cir.) ("We find 'cause' for petitioner's failure to raise the ineffective assistance issue in his first state habeas petition in the fact that petitioner's trial counsel, whose effectiveness is here challenged, also represented him in the first state habeas proceeding."), *cert. denied*, 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed.2d 158 (1988); *Riner v. Owens*, 764 F.2d 1253, 1257 (7th Cir.1985) ("We hold that ... representation of one or more of these defendants by the same attorney on direct appeal can meet the cause element of the cause and prejudice standard under certain circumstances.... Since it would be most difficult if not professionally awkward to require a lawyer to argue on appeal his own ineffectiveness ... we conclude that identity of trial and appellate counsel can constitute sufficient cause to meet the first element of the cause and prejudice standard."), *cert. denied*, 475 U.S. 1055, 106 S.Ct. 1282, 89 L.Ed.2d 589 (1986); *Alston v. Garrison*, 720 F.2d 812, 816 (4th Cir.1983) ("We are satisfied with Alston's excuse for failing to raise his ineffectiveness claim at trial and on state appeal. The content of an appeal is heavily controlled by counsel, and where, as here, the defendant's trial lawyer also prosecuted the appeal, it is obvious that ineffective assistance of counsel is not likely to be raised at trial or to appear among the assignments of constitutional error."). *But see Bonin v. Calderon*, 77 F.3d 1155, 1159 (9th Cir.1996) (second petition was abuse of the writ where it asserted claim for ineffective assistance of appellate counsel not asserted in first petition; "[Petitioner] therefore cannot show cause by alleging that his first habeas counsel performed ineffectively in failing to allege the ineffectiveness of his appellate counsel in the first set of habeas petitions. His counsel's failure to raise the issue of his own ineffectiveness of appeal did not violate [Petitioner]'s rights under the Sixth Amendment."), *cert. denied*, —— U.S. ——, 116 S.Ct. 980, 133 L.Ed.2d 899 (1996).

The rationale expressed in *Ciak* and *Billy–Eko*, as well as in cases from other circuits, applies to the situation presented here.[4] Appellate Counsel did not argue that he provided constitutionally ineffective assistance to Grady on Grady's direct appeal as a basis for

---

4. In *Ciak* the Court recognized that claims of ineffective assistance of counsel frequently raise issues outside of the trial record and that a claim based on such issues would be subject to review notwithstanding a procedural default. *See Ciak*, 59 F.3d at 304 ("Moreover, ineffective assistance claims requiring the development of facts outside the trial record not only are unlikely to be discov-

ered and asserted on direct appeal, but typically will not even be cognizable in that proceeding."). This is a second and independent basis for finding "cause" separate and apart from the identity of trial and appellate counsel—not applicable in Grady's case because the matters at issue are confined to the record at trial and on appeal.

relief in the first habeas petition. But Grady should not be penalized on his second petition in which he asserts that claim because Appellate Counsel could not reasonably have been expected to raise the claim of his own ineffectiveness on direct appeal in the first habeas petition. Accordingly, the fact that counsel for Grady's first habeas petition was the same counsel whose performance on direct appeal Grady now claims was ineffective constitutes "cause" under *McCleskey*.

Grady has also satisfied the requirement of "actual prejudice" under *McCleskey*. As explained in more detail below, Grady has made a strong showing that but for Appellate Counsel's ineffective assistance, it was likely that his conviction would have been reversed on appeal because the indictment was duplicitous. Grady has shown substantial actual prejudice as a result of the ineffective assistance of appellate counsel.

Accordingly, even if this petition were subject to challenge for abuse of the writ, Grady has demonstrated both cause and prejudice for having omitted the claim for ineffective assistance of appellate counsel from the first habeas petition. Therefore, the Respondent's interposition of the defense of abuse of the writ is overcome.[5]

### III.

 The second procedural obstacle Grady faces is the argument that he has failed to exhaust his state remedies with respect to his ineffective assistance of appellate counsel claim. The Respondent argues that Grady presents new material facts relevant to the claim that Grady's Appellate Counsel neglected to pursue the issue of duplicity of the indictment on his direct appeal. Specifically, the Respondent argues, Grady asserted in his coram nobis motion to the Appellate Division, First Department,

that his Appellate Counsel failed to raise the duplicity argument because Appellate Counsel did not understand the doctrine and was ignorant of the relevant case law. In the present habeas corpus petition, however, Grady explains that Appellate Counsel confused the doctrine of duplicity with the doctrine of multiplicity.[6] The Respondent argues that this somewhat different explanation of why Appellate Counsel did not raise the duplicity issue on Grady's direct appeal is a new factual allegation that is material to the issue of ineffective assistance of counsel.

Grady argues that the explanation of why Appellate Counsel may have failed to base an appeal on the duplicity doctrine is not material to his legal claim of ineffective assistance of appellate counsel. Grady maintains that the crucial question with respect to exhaustion is whether the New York state court was presented with his claim. Grady argues that the claim was presented and that therefore he has exhausted his state remedy. Grady also offers to withdraw the new explanation if the Court finds it creates a new factual issue not yet presented to the New York state courts.

 To exhaust properly claims presented in a federal habeas petition, the petitioner must fairly present those claims to the state court in a manner that provides an opportunity for the state court to hear the claims. *See Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *see also* 28 U.S.C. § 2254(b). As the Court of Appeals for the Second Circuit explained in this circuit's foremost decision on this issue:

[T]he petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court.... Specifically, he must have set forth in state court all of the essential

---

5. While the merits of an abusive petition may also be reached upon a showing of a miscarriage of justice, it is unnecessary to reach that basis in light of the findings above. It should be noted that Grady maintained his innocence throughout the trial and argues that the duplicity of the indictment actually hampered his defense. The Respondent in this case has maintained with equal intensity that the evidence of Grady's guilt was more than sufficient.

6. Duplicity is different from multiplicity. "A count is duplicitous when more than one offense is contained in a single count.... An indictment or information is multiplicitous when a single offense is charged in more than one count." *People v. Kaszovitz,* 167 Misc.2d 638, 640 N.Y.S.2d 721, 722 (N.Y.City Crim.Ct., Bronx Co.1996) (citing cases).

# 1060

factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim.

*Daye v. Attorney General of the State of New York,* 696 F.2d 186, 191–92 (2d Cir.1982) (en banc).

In this petition, Grady's claim of ineffective assistance of appellate counsel was presented fairly and fully to the Appellate Division in both its legal and factual aspects. The memorandum of law Grady submitted in support of his motion for a writ of coram nobis quite clearly identified the legal claim as ineffective assistance of appellate counsel. It also set forth the factual basis for the claim, including how the duplicity issue was raised before, during, and after trial, how the issue was properly preserved, the timing of the *Keindl* case, Grady's efforts to have Appellate Counsel include the duplicity issue in his direct appeal, and, after *Keindl,* to inquire of Appellate Counsel whether the case could be brought to the attention of the Appellate Division or the Court of Appeals. The memorandum also sets forth Appellate Counsel's inaction in response to Grady's entreaties and contrasts the relative merits of the grounds Appellate Counsel did base the appeal on with the promise held by the duplicity claim. The memorandum also identifies similar convictions that were vacated on the basis of duplicity subsequent to *Keindl,* bolstering the argument that the failure to pursue the issue on appeal constituted ineffective assistance of counsel.

█ The only new aspect of the claim is the alternative supposition for Appellate Counsel's failure to have raised the duplicity issue. But the critical legal inquiry compares the arguments ignored by Appellate Counsel with the arguments that were raised and focuses on whether the appellate lawyer's representation fell below the objective standard of reasonableness and whether there is a reasonable probability that the outcome would have been different but for that lawyer's error. *See Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994).

In Grady's case, there is no meaningful difference between an argument that Appellate Counsel confused duplicity and multiplic-

ity and one that he simply did not understand duplicity at all. The thrust of both arguments is that a decision not to pursue that issue was not strategic and was based on Appellate Counsel's alleged incompetence or neglect rather than a professional evaluation of the relative promise of that particular line of argument. The additional explanation for the reason behind a lawyer's oversight does not "fundamentally alter the nature of [the petitioner's] legal claim already considered by the state courts." *Vasquez v. Hillery,* 474 U.S. 254, 260, 106 S.Ct. 617, 622, 88 L.Ed.2d 598 (1986). Indeed, if ignoring the duplicity issue on appeal was objectively reasonable, the fact that Grady's counsel may have been confusing duplicity and multiplicity does nothing to alter the objective reasonableness of that choice. On the other hand, if the failure to argue duplicity was *not* objectively reasonable, it would not be made so because the lawyer confused it with another legal concept.

This is not a case like *Rodriguez v. Hoke,* 928 F.2d 534 (2d Cir.1991) where the petitioner asserted the ineffective assistance of his trial counsel based on six distinct allegations including failure to object to a jury charge not being read into the record, failure to object to the supplemental jury charge, and failure to move for a mistrial based on juror incompetence, among others. The Court of Appeals held that the petitioner had failed to exhaust his state remedies because only the first two of the six separate instances had been raised before the state court. The court explained that: "[S]ince [petitioner's] claim of ineffective assistance of counsel can turn on the cumulative effect of all of counsel's actions, all his allegations of ineffective assistance should be reviewed together." *Id.,* 928 F.2d at 538.

█ In contrast, Grady asserts only one instance of alleged ineffectiveness: the failure to argue duplicity on appeal. Whatever the reason for that failure, it remains a single claim that has been raised fully before the New York state courts. Therefore, Grady's petition presents a properly exhausted claim of ineffective assistance of Appellate Counsel

raising no new, as yet unexhausted material factual allegations.[7]

## IV.

There being no procedural impediment in this case, the merits of Grady's claim of ineffective assistance of Appellate Counsel may be addressed.

## A.

On a petition for a writ of habeas corpus based on ineffective assistance of counsel, the petitioner must show that (i) his counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time, and (ii) that counsel's deficient performance was prejudicial to the petitioner's case. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Bunkley v. Meachum*, 68 F.3d 1518, 1521 (2d Cir.1995). The Court of Appeals for the Second Circuit has applied *Strickland* to habeas petitions based on ineffective assistance of appellate counsel. *See Bunkley*, 68 F.3d at 1521; *Abdurrahman v. Henderson*, 897 F.2d 71, 74 (2d Cir.1990).

Deficient performance, the first part of the *Strickland* test, entails legal practice which falls "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. An attorney's performance must be evaluated in light of prevailing legal practice at the time, without the benefit of hindsight. *Id.; Jameson v. Coughlin*, 22 F.3d 427, 429 (2d Cir.1994) (holding that counsel's appellate strategy was reasonable given precedents of the Appellate Division at the time of the appeal). In appellate practice, an attorney need not raise every nonfrivolous legal argument on appeal, *Jones v. Barnes*, 463 U.S. 745, 754, 103 S.Ct. 3308, 3314, 77 L.Ed.2d 987 (1983), nor must a lawyer anticipate significant changes in the law which might suggest alternative strategies to improve the client's chance at a reversal. *See Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir.), *cert. denied*, 510 U.S. 852, 114 S.Ct. 154, 126 L.Ed.2d 116

(1993); *Horne v. Trickey*, 895 F.2d 497, 500 (8th Cir.1990); *United States ex rel. Roche v. Scully*, 739 F.2d 739, 742–44 (2d Cir.1984).

Deficient performance may be established, however, if the petitioner shows that his appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo*, 13 F.3d at 533. *See also Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."). The comparison of omitted and included arguments on appeal is not to be performed in a vacuum—the omitted claims must have some positive merit. As the Court of Appeals has explained:

> We doubt that constitutional ineffectiveness of appellate counsel can be predicated on a finely calibrated measurement of the relative lack of merit of several issues, all of which appeared unlikely to result in a new trial based on the case law "as of the time of counsel's conduct." We would, of course, have a different case if the three issues presented had been advanced in preference to an omitted issue that appeared to be meritorious.

*See Jameson*, 22 F.3d at 430 (citation omitted). On the other hand, it need not be assured that the omitted claim would have prevailed had it been presented. *See Mayo*, 13 F.3d at 533–34; *Claudio v. Scully*, 982 F.2d 798, 805 (2d Cir.1992), *cert. denied*, 508 U.S. 912, 113 S.Ct. 2347, 124 L.Ed.2d 256 (1993). The ultimate issue is whether counsel's failure to raise the omitted claim constituted legal representation below an objective standard of reasonableness.

The second part of the *Strickland* test is a showing of prejudice. To satisfy this part of the test, the petitioner must show that: "[T]here is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to un-

---

7. In any event, Grady has stipulated to forego any factual argument not presented to the New York State courts. And, as explained above, this

petition does not turn on the current suppositions as to the motivation for Appellate Counsel's not having raised the issue.

dermine confidence in the outcome." *Bunkley*, 68 F.3d at 1521 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068). In some situations, however, a different outcome on appeal is a necessary but not a sufficient showing for satisfying the prejudice part of the test. In *Lockhart v. Fretwell*, 506 U.S. 364, 370, 113 S.Ct. 838, 843, 122 L.Ed.2d 180 (1993), the Supreme Court indicated that "an analysis focussing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." In *Fretwell*, the habeas petitioner asserted a claim of ineffective assistance of trial counsel based on the lawyer's failure, during the death penalty sentencing phase of the trial, to object to an issue relating to aggravating factors. The petitioner argued that the objection would have provided a basis for appeal in light of governing Eighth Circuit case law. Although that case law was subsequently overruled by the Eighth Circuit in light of Supreme Court precedent, the district and circuit court agreed that the failure to raise a then-winning argument prejudiced the petitioner. The Supreme Court reversed, explaining that the petitioner had no entitlement to an appeal based on the application of law that was later overruled. The Court explained that "the 'prejudice' component of the *Strickland* test ... focusses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Id.*, 506 U.S. at 372, 113 S.Ct. at 844.

The majority opinion did not specify the circumstances under which such an inquiry into fairness or reliability is required. In a concurring opinion, however, Justice O'Connor expressed the view that the traditional *Strickland* test would suffice in all but a few exceptional cases, of which *Fretwell* was one. *See Fretwell*, 506 U.S. at 373–74, 113 S.Ct. at 844–45 (O'Connor, J., concurring). As Justice O'Connor explained, the prejudice inquiry of *Strickland* should not include a right to have a state court make an error in the petitioner's favor. *Id.*, 506 U.S. at 374–75, 113 S.Ct. at 845 (O'Connor, J., concurring).

In *Bunkley*, the Court of Appeals for the Second Circuit did not resolve the question of the scope of *Fretwell*, but it did find that an additional showing of fundamental unfairness or unreliability, as described in *Fretwell*, was unnecessary where the claim overlooked by appellate counsel was based exclusively on state law. *See Bunkley*, 68 F.3d at 1522–23; *see also Mayo*, 13 F.3d at 530–31 (omitted claim on appeal based on New York's *Rosario* rule examined solely under *Strickland* test for prejudice; decided after *Fretwell*); *Claudio*, 982 F.2d at 800–01 (omitted claim based on New York Constitution examined under *Strickland* test; decided before *Fretwell*).[8] The *Bunkley* court also found that where there is no reason to suspect the state appellate courts would incorrectly decide an omitted claim based on federal law, no additional inquiry into fairness or reliability under *Fretwell* would be required. *See Bunkley*, 68 F.3d at 1522–23.[9]

This petition involves a straightforward claim that appellate counsel failed to raise an argument under state law that would have prevailed on appeal. As explained below, the validity of the foregone argument has actually been confirmed rather than undermined or overturned by subsequent decisions from the New York state courts. Thus, this petition fits within that class of cases where the traditional *Strickland* analysis plainly applies and where the "outcome of the appeal" test explained in *Bunkley* is the appropriate measure of prejudice.

### B.

The question of whether the performance of Grady's lawyer on direct appeal was deficient begins with an analysis of the omitted

---

8. *Bunkley* itself involved an omitted claim based on federal law which the state courts were misapplying at the time of the appeal. Accordingly, the Court of Appeals examined the fairness and reliability of the state proceedings on appeal, holding that the petitioner was not prejudiced by his counsel's failure to have pursued a claim that may have succeeded only because of the erroneous application of federal law in the state court. *See Bunkley*, 68 F.3d at 1523.

9. The *Fretwell* formulation was not applied in the even more recent case of *Boria v. Keane*, 83 F.3d 48, 53–54 (2d Cir.1996), a habeas petition involving ineffective assistance of trial counsel.

claim. That claim is a challenge to Grady's indictment based on the doctrine of duplicity. There was clear authority at the time of Grady's appeal indicating that an argument based on the duplicity of the indictment would likely have been successful.

The New York Criminal Procedure Law provides that: "Each count of an indictment may charge one offense only." CPL § 200.30(1) (adopted in 1970 and unaltered since). This statutory prohibition codified well-established New York common law. *See People v. Klipfel,* 160 N.Y. 371, 374, 54 N.E. 788 (1899) ("An indictment containing but one count and charging two distinct crimes, is bad for duplicity."). Indictments defective because of duplicity are subject to dismissal. *See* CPL §§ 210.20(1)(a), 210.25(1).

In one of the earliest cases discussing CPL § 200.30, the Appellate Division set forth the traditional test for duplicity:

> The test for duplicity of a count of an indictment has been stated to be whether the defendant could be convicted of either one of the crimes charged therein if the District Attorney elects to waive the other.

*People v. Branch,* 73 A.D.2d 230, 234, 426 N.Y.S.2d 291, 294 (2d Dep't 1980) (citations omitted). "Where, however, a crime by its nature as defined in the Penal Law may be committed either by one act or by multiple acts and can be characterized as a continuing offense over time, the indictment may charge the continuing offense in a single count." *People v. First Meridian Planning Corp.,* 86 N.Y.2d 608, 615–16, 635 N.Y.S.2d 144, 148, 658 N.E.2d 1017, 1021 (1995). The continuing crime doctrine has been applied to permit otherwise duplicitous indictments in cases such as larceny, *see People v. Rosich,* 170 A.D.2d 703, 703–04, 567 N.Y.S.2d 749, 750–51 (2d Dep't), *appeal denied,* 77 N.Y.2d 1000, 571 N.Y.S.2d 926, 575 N.E.2d 412 (1991), depraved indifference murder, *see People v. Brammer,* 189 A.D.2d 885, 886, 592 N.Y.S.2d 761, 762 (2d Dep't), *lv. denied,* 81 N.Y.2d 967, 598 N.Y.S.2d 769, 615 N.E.2d 226 (1993), and intentional misrepresentation. *See People v. Kirk,* 62 Misc.2d 1078, 1080–81, 310 N.Y.S.2d 155, 159–60 (N.Y.Co.Ct., Rockland Co.1969).

The earliest decisions relating to the viability of the continuing crime doctrine in the context of sex offenses arose from challenged sentences rather than indictments. In *People v. Yonko,* 41 A.D.2d 514, 339 N.Y.S.2d 837 (1st Dep't 1973), *aff'd,* 34 N.Y.2d 825, 359 N.Y.S.2d 54, 316 N.E.2d 338 (1974), the defendant appealed a conviction for multiple counts of sodomy and assault against his daughters who ranged in age from two-and-a-half months to ten years. The defendant challenged the imposition of consecutive minimum prison terms on several of the counts. The court modified the sentence to a maximum of five years without any minimum to be served concurrently, explaining that "the imposition of minimums and consecutive terms would defeat the possibility of correction of defendant by rehabilitative training. Though there are different violations spelled out, *defendant's acts constituted but one continuing crime and should be regarded as such." Id.,* 41 A.D.2d at 515, 339 N.Y.S.2d at 840 (emphasis added).

In another appeal of the imposition of consecutive sentences for a rape conviction, the defendant argued that the three rapes of a sixteen-year old over a seventeen-hour period were part of a continuing crime. *See People v. Brown,* 66 A.D.2d 223, 226, 413 N.Y.S.2d 482, 483 (3d Dep't 1979). The court rejected this argument, however, and held that each act of intercourse was a separate and distinct offense justifying consecutive sentences. *Id.,* 66 A.D.2d at 226, 413 N.Y.S.2d at 483–84.

The first case the parties identify dealing directly with the issue of duplicity of an indictment for a sex offense is *People v. MacAfee,* 76 A.D.2d 157, 431 N.Y.S.2d 149 (3d Dep't 1980). The defendant appealed his conviction on two counts of rape and one count of child endangerment, asserting that the indictment was defective. The indictment charged the defendant with having engaged in sexual intercourse with a woman less than eleven years old at unknown times over a twenty-month period. In response to a motion for a bill of particulars, the People identified four specific occasions and a nineteen-month period during which the defendant allegedly raped the victim at least fif-

teen other times. The Appellate Division described this amplification of count one of the indictment as a clear violation of CPL § 200.30, the duplicity prohibition. *See id.,* 76 A.D.2d at 159–60, 431 N.Y.S.2d at 151. The court went on to find the second rape count was also duplicitous. *See id.,* 76 A.D.2d at 160, 431 N.Y.S.2d at 151. That count alleged that the defendant engaged in sexual intercourse with a different woman, also younger than eleven years, at some time during a particular month. The People's affidavits in answer to the defendant's motion for a bill of particulars, however, alleged one rape in that month, and two others sometime in the same year. The court dismissed both counts on the basis of duplicity. *Id.*

A very similar indictment was found duplicitous by the Fourth Department in *People v. Pries,* 81 A.D.2d 1039, 440 N.Y.S.2d 116 (4th Dep't 1981). In that case the indictment alleged one count of rape by the adult defendant against a woman younger than seventeen years at an unspecified time from May 1978 to April 1979, a period of twelve months. The bill of particulars provided by the district attorney narrowed the time frame to the Summer and Fall of 1978 and the later half of April 1979. The trial court conducted an *in camera* hearing at which the victim identified eight specific dates. The Appellate Division reversed the conviction, holding that the lack of specific dates made the indictment defective for inspecificity. Even if the victim's testimony cured that defect, the court continued, the indictment would still have been defective as duplicitous. *See id.,* 81 A.D.2d at 1039, 440 N.Y.S.2d at 117.

Up until this point, the case law had not revealed any distinction on the issue of duplicity for sex offenses based on the age of the victim or the victim's relationship to the defendant. That difference was featured in *People v. Barlow,* 88 A.D.2d 668, 451 N.Y.S.2d 254 (3d Dep't 1982). In that case, the defendant was convicted of raping and sodomizing his two daughters, ages thirteen and fourteen. The defendant appealed, challenging the indictment on grounds of duplicity and lack of specificity. The Appellate Division was unpersuaded by this argument, citing *Yonko* for the proposition that "repeated sexual molestation of one's own young children have been treated as one continuous crime." *Id.,* 88 A.D.2d at 668, 451 N.Y.S.2d at 256. The court also noted that the defendant had not demonstrated he was not in fact on notice of the crimes charged and that he had not demanded a bill of particulars in any event until after the trial was concluded. *Id.*

The Fourth Department disagreed with the *Barlow* court on the question of duplicity. In *People v. Faux,* 99 A.D.2d 654, 472 N.Y.S.2d 230 (4th Dep't), *appeal denied,* 62 N.Y.2d 649, 476 N.Y.S.2d 1043, 464 N.E.2d 995 (1984), the defendant was charged with over three-hundred counts of rape, sodomy, and sexual abuse of his three young daughters. On the basis of grand jury testimony alleging a random pattern of abuse once or twice each month, the People charged the defendant with one count for each victim for each month over a four year period. Unlike *Barlow,* this defendant demanded a bill of particulars. The People's response, however, simply explained it was impossible to specify exact dates for the sexual assaults. The Appellate Division found the indictment duplicitous and reversed the convictions. The court found fault in the People's inability to designate specific dates for the crimes charged. *See id.,* 99 A.D.2d at 655, 472 N.Y.S.2d at 231. The court also held that:

> While there is authority that repeated acts of sexual molestation of one's own children may be treated as a continuous crime [citing *Barlow*], we have previously held that "multiple rapes of the same victim do not constitute a continuing offense, rather each act of intercourse is a separate and distinct offense [citing *Pries*]."

*Id.*

Both Grady and the Respondent identify the foregoing cases as the relevant authorities as of the date of Grady's conviction on the issue of duplicity with respect to indictments charging sexual offenses.

In short, there were at least three Appellate Division decisions—*MacAfee, Pries,* and *Faux*—which had reversed convictions for allegedly continuing sexual offenses because of the duplicitous nature of the indictments. While *Barlow* had found no duplicity, it did

so in the context of molestation of the defendant's own young children. And *Yonko*, a case directly contradicted by *Brown*, did not concern duplicity of counts in an indictment at all.

A related line of authority relating to specificity under CPL § 200.50 had also developed by the time of Grady's appeal. These cases generally related to challenges to the indictment based on the failure to designate a specific date for the offense charged. The leading case, *People v. Morris*, 61 N.Y.2d 290, 473 N.Y.S.2d 769, 461 N.E.2d 1256 (1984), reinstated an indictment that charged the defendant with two sexual offenses perpetrated over a twenty-four day period against two young girls ages five and six, one of whom was the defendant's daughter. The Court of Appeals reiterated that an indictment ought to state the date and time of the offense charged to the extent reasonable under the circumstances, explaining that:

> [F]actors to be considered might include but should not be limited to the length of the alleged period of time in relation to the number of individual criminal acts alleged; the passage of time between the alleged period for the crime and defendant's arrest; the duration between the date of the indictment and the alleged offense; and the ability of the victim or complaining witness to particularize the date and time of the alleged transaction or offense.

*Id.*, 61 N.Y.2d at 296, 473 N.Y.S.2d at 773, 461 N.E.2d at 1260. The court ruled that the indictment in *Morris* was not defective, holding that the indictment provided reasonable and adequate notice under the circumstances of the case, citing factors such as the victims' ages, the inability of the victims to provide specific dates and times, and the fact that the victims resided in the defendant's home. *See id.*, 61 N.Y.2d at 296–97, 473 N.Y.S.2d at 773, 461 N.E.2d at 1260. The opinion did not discuss or even mention duplicity.

*Morris* was applied in the later case of *People v. Benjamin R.*, 103 A.D.2d 663, 481 N.Y.S.2d 827 (4th Dep't 1984), where the defendant appealed his conviction for sodomy, sexual abuse, and child endangerment against his fourteen-year-old stepdaughter. The indictment charged acts alleged to have occurred during a two-week period, a period of time the defendant challenged as inspecific and defective under CPL § 200.50. The court disagreed, citing *Morris* for the proposition that the time period was reasonably precise under the circumstances of the case. *See id.*, 103 A.D.2d at 666–67, 481 N.Y.S.2d at 830–31. The defendant also argued the indictment was defective for duplicity under CPL § 200.30. The court noted that the duplicity argument had not been raised before the trial court, and that in any event there was no defect because "on its face, each count of the indictment alleges only one sexual offense within a designated period of time." *Id.*, 103 A.D.2d at 667, 481 N.Y.S.2d at 831.

At the time of Grady's conviction, such was the state of the law of New York with respect to the two related doctrines of duplicity and specificity, subject to challenge under CPL §§ 200.30 and 200.50 respectively. The grounds asserted by Appellate Counsel in the brief he submitted on Grady's behalf did not include duplicity. The duplicity issue had been properly preserved at trial and could have been among the bases for appeal. The issue had been raised by trial counsel after the People submitted a bill of particulars which provided that each and every act charged during the various one- and two-month periods alleged in each count of the indictment occurred "in a continuous course of conduct, excluding weekends." (App. at 68–71.)

The indictment, No. 3778/84, originally charged two counts of rape in the first degree, twenty-four counts of sodomy in the first degree, and sixteen counts of sexual abuse in the first degree. (*See* App. at 25.) Each of the rape counts was formulated as follows:

> The defendant, in or about the month of April, 1984, in the County of the Bronx, engaged in sexual intercourse with [_____], a female....

The sodomy counts were formulated as follows:

> The defendant, in or about the month of April, 1984, in the County of the Bronx, engaged in deviate sexual intercourse, to

wit: contact between the penis of Nathaniel T. Grady and the anus of [_____], . . . .

In some counts, the date indicated was "February 1984," and in others "March and April of 1984." The sexual abuse counts were formulated similarly to the sodomy counts.

The first bill of particulars provided by the People, (*see* App. at 68–71), provided the following information:

> 7. Each and every act charged in counts one through eight of the indictment, alleged to have been committed by the defendant upon [_____], is alleged to have occurred in or about the month of April 1984, in a continuous course of conduct, excluding weekends.

Paragraphs 8–12 of the bill of particulars included identical language with respect to the other counts relating to the other children, in some cases indicating a date of "February 1984" and in other cases "March and April, 1984" corresponding to the dates indicated in the indictment for the counts relating to each particular child. Each paragraph included the phrase "in a continuous course of conduct, excluding weekends."

A later amended bill of particulars also alleged that Grady committed the crimes charged in a continuous course of conduct. (*See* App. at 73–75.) For example, in paragraph five the People explained:

> Each and every act charged in counts one through eight of the indictment, alleged to have been committed by the defendant upon [_____], is alleged to have been committed in a continuous course of conduct, in and about the months of March and April, 1984, excluding March 12, 1984, April 17th through April 19, 1984, April 23rd and 24th, 1984, and weekends.

The remaining paragraphs provided similar information for the counts in the indictment relating to each child, and while the dates included and excluded varied, the phrase "continuous course of conduct" appeared in each.

After the People submitted the amended bill of particulars, Grady's trial counsel challenged the indictment as defective for duplicity under CPL § 200.30, arguing that after the People's submissions "[t]here can no longer be any question but that each count of the indictment charges *more than one offense,* and, indeed, seeks to charge an unspecified number of multiple offenses (without, of course, delineating the specifics of each offense)." (App. at 85 (emphasis in original).) Both *MacAfee* and *Brown* were cited in support, and *Barlow* and *Yonko* were distinguished as cases where the continuing crime doctrine had been narrowly applied. (*See* App. at 85–86.)

The People opposed Grady's pretrial motion to dismiss the indictment under CPL § 200.30, arguing that the defendant was confused about the meaning of the phrase "continuous course of conduct." (App. at 91.) In its brief, the People explained that the phrase did not mean that the defendant was now charged with multiple offenses in each count of the indictment, (*see* App. at 102), but rather that "the incidents involved here are not isolated, distinct, and unrelated, but continuous incidents, related in time and space, which occurred over designated periods." (App. at 102.) The People concluded that "since ['continuous course of conduct'] refers solely to the manner in which defendant is alleged to have committed the offenses charged and not to the number of offenses he is charged with committing, defendant's argument that the indictment is defective for duplicity must be rejected." (*Id.*) The People elaborated further in its accompanying affirmation:

> [S]uch statement alerts defendant to the fact that conduct which comprises one particular count may have been committed over all or part of the designated period of time and not necessarily, on one particular day. In short, the statement in issue refers solely to the manner in which defendant is alleged to have committed the offenses charged and not to the number of offenses he is charged with committing.

(App. at 92.) The trial court denied the motion to dismiss without explanation. (*See* App. at 108.) The duplicity issue was raised again unsuccessfully in Grady's post-trial motion to set aside the verdict. (*See* App. at 118.)

Accordingly, there was nothing to prevent duplicity from being a basis for appeal. The

issue had been properly preserved at trial, there was a concise record including the indictment, the bill of particulars and its later amendment, a fully briefed motion to dismiss on the basis of duplicity including the People's explanation of the use of the phrase "continuous course of conduct," and the grand jury and trial testimony of the children Grady was convicted of raping, sodomizing, and sexually abusing. Moreover, there was the statutory proscription against duplicitous indictments buttressed by a meaningful number of cases directed to the question of whether crimes such as rape, sodomy, and sexual abuse could be charged as continuing offenses.

Accordingly, and against the factual and legal circumstances of this case, duplicity was a nonfrivolous, and indeed robust basis for appeal. Other similar convictions had been reversed on precisely the same grounds. Therefore, whether the deficient performance prong of the *Strickland* test is met turns on whether omitting the duplicity claim from Grady's direct appeal in light of the arguments that were made constituted legal representation below an objective standard of reasonableness.

## C.

To determine the reasonableness of omitting the duplicity claim, it is useful to examine the steps that Grady's counsel did take in prosecuting the appeal.

Shortly after Grady was sentenced, Appellate Counsel submitted an eighty-four page opening brief, an equally extensive reply brief, and myriad references to the 5,500 page trial record. Appellate Counsel's brief presented six alleged trial errors: (1) the alleged failure by the District Attorney to present exculpatory evidence to the grand jury; (2) the alleged failure to conduct a pretrial line-up to allow Grady to test the children's ability to identify him before doing so in the courtroom; (3) the denial of Grady's pretrial suppression motion without a *Wade* hearing; (4) the administration of the testimonial oath to five-year-old witnesses; (5) the alleged suggestive and leading nature of the questioning of the children regarding the

in-court identification of Grady; and (6) the alleged lack of corroborative evidence.

Even Appellate Counsel did not appear sanguine about some of these arguments. With respect to the *Wade* hearing issue, Appellate Counsel wrote "[a]ppellant has no absolute constitutional right to a pre-trial line-up." (App. at 397.) And as a preface to the argument on the first alleged error, Appellate Counsel acknowledged that "in general courts do not review errors at the Grand Jury level on appeal." (App. at 392.) Moreover, the second, third, fourth, and fifth alleged errors were each explicitly presented as instances where the trial court had abused its discretion, a demanding standard for the appellant to meet on appeal. The final ground, lack of corroboration, was also a difficult argument in light of the fact that corroborative evidence need only tend "to establish the crime and connect [ ] defendant with its commission," *People v. Groff*, 71 N.Y.2d 101, 104, 524 N.Y.S.2d 13, 14, 518 N.E.2d 908, 909 (1987), a mild showing in light of the abundance of potentially corroborative evidence in the trial record, including the testimony of the parents about their children's behavior around the time of the alleged assaults, the expert psychological testimony, and the testimony of the children in regard to each other. In spite of the formidable task Appellate Counsel faced, he waived oral argument and relied entirely on the written submissions.

In terms of its relative merit at the time Grady's appeal was submitted, the duplicity argument was a powerful one in favor of reversal of the conviction and dismissal of the indictment. While *Yonko* and *Barlow* at least insinuated that the continuous crime doctrine might apply to crimes of rape, sodomy, and sexual abuse, more cases in circumstances involving properly presented challenges to indictments for such crimes reflected the view that the continuing crime doctrine would not save an otherwise duplicitous indictment, among them *Brown, MacAfee, Pries,* and *Faux*. And, of course, there remained the conspicuous prohibition against duplicitous indictments embodied in CPL § 200.30. Additionally, the duplicity issue presented a purely legal question requiring a

review of easily segregable excerpts from the extensive trial record. Most significantly, the legal question of duplicity requires a plenary standard of review. From this perspective, an appeal based on duplicity would be considerably more attractive than those arguments Appellate Counsel did in fact pursue.

Notwithstanding the opaque explanation provided by the People as to the meaning of the phrase "continuous course of conduct" appearing in its bill of particulars, Appellate Counsel elected not to include duplicity of the indictment as a ground for Grady's appeal. He made this choice in the face of testimony by the children Grady was accused of sexually assaulting that was imprecise with respect to the times and dates of the alleged offenses and contained descriptions of multiple acts of rape, sodomy, and sexual abuse occurring on numerous dates.

Whatever room for uncertainty might have existed about the advisability of raising the duplicity issue on appeal at the time Appellate Counsel's reply brief was filed on September 26, 1986, (see Affidavit of Susan L. Valle, dated Feb. 17, 1995, ("Valle Aff."), ¶ 12), such uncertainty was reduced substantially, if not eliminated entirely when the New York Court of Appeals issued its decision in *People v. Keindl*, 68 N.Y.2d 410, 509 N.Y.S.2d 790, 502 N.E.2d 577 (1986).

In *Keindl*, the defendant was convicted of twenty-six counts of sodomy, sexual abuse, and child endangerment against his three stepchildren, ages eight, nine, and eleven. The defendant challenged the indictment based on duplicity under CPL § 200.30 and lack of specificity with respect to dates and times under CPL § 200.50. The People argued that the dates and times, in one case a period of two years, were sufficiently specific under *Morris*. And, while conceding that individual counts charged multiple offenses, the People argued that the indictment was not duplicitous because the offenses charged were continuing crimes. On the issue of specificity, the court reaffirmed the holding of *Morris*, enumerating the facts to be considered when evaluating the reasonableness of an indictment. The court also noted, however, that *Morris* included the qualification

that "the interval ascribed for a particular crime [may be] so excessive that, on its face, it is unreasonable and dismissal should follow." *Keindl*, 68 N.Y.2d at 419, 509 N.Y.S.2d at 794, 502 N.E.2d at 581 (quoting *Morris*, 61 N.Y.2d at 295, 473 N.Y.S.2d at 772–73, 461 N.E.2d at 1259–60) (alterations in original). The court then held that the counts in the indictment against the defendant charging sodomy and sexual abuse over ten, twelve, and sixteen-month periods were "so excessive on their face that they are unreasonable," also distinguishing *Morris* based on the fact the victims in that case were younger and presumably less able to recall specific times or dates. *Id.*, 68 N.Y.2d at 419–20, 509 N.Y.S.2d at 794, 502 N.E.2d at 581. The court did not rule on whether counts charging sodomy and sexual abuse over periods of one to two months were excessive under *Morris* because it found those counts to be duplicitous, as explained below. *Id.*, 68 N.Y.2d at 419 n. 3, 509 N.Y.S.2d at 794 n. 3, 502 N.E.2d at 581 n. 3.

The court then turned to the question of duplicity and ruled on two particular challenges. The first related to certain sodomy and sexual abuse counts alleged in the indictment to have occurred over periods of one or two months. The court examined the People's argument in favor of the continuing crime doctrine in detail, and rejected it:

[W]e decline to apply the "continuous crime" theory, a question we did not reach in *Morris*, to the crimes of sodomy and sexual abuse of which this defendant stands convicted. This theory would permit repeated acts of sexual molestation on young children within the family to be treated as "one continuous crime" because generally, the offenses are committed within the privacy of the home; the victims are children of tender years who are unable to remember specific dates, and from whom the defendant is able to demand secrecy; there are rarely any adult witnesses; and the abuse emerges as a pattern of conduct over a significant period of time [citing *Barlow; cf. Pries*] [T]he People argue that charging multiple sexual offenses on a child family member as "one continuing crime" benefits both the victim and the

defendant: the victim may pursue prosecution despite the inability to recall exact dates; the defendant, having been charged with one crime encompassing the complete time span, is exposed, if convicted, only to a sentence based upon one conviction rather than a sentence for several convictions, and he may still raise the bar against double jeopardy from future prosecutions for the same acts within that time span.

Although the "continuing crime" theory may be appropriately applied in the proper case, it has no applicability here as to the crimes of sodomy and sexual abuse of which this defendant has been convicted. Sodomy and sexual abuse, as those crimes are defined in the Penal Law, punish the performance of a single act. In some instances, significant benefits may derive from the application of the "continuing crime" theory to a series of individual acts. Here, however, there is such a multiplicity of acts encompassed in single counts as to make it virtually impossible to determine the particular act of sodomy or sexual abuse as to which the jury reached a unanimous verdict. The resulting prejudice to the defendant is manifest.

*Id.,* 68 N.Y.2d at 420–21, 509 N.Y.S.2d at 794–95, 502 N.E.2d at 581–82 (footnote omitted).

The defendant's second duplicity challenge to the indictment related to the child endangerment counts. In that regard, the court found no difficulty adopting the continuing crime doctrine because "[e]ndangering the welfare of a child, unlike sodomy and sexual abuse, is a crime that by its nature may be committed either by one act or by multiple acts and readily permits characterization as a continuing offense over a period of time." *Id.,* 68 N.Y.2d at 421, 509 N.Y.S.2d at 795, 502 N.E.2d at 582.

 Appellate Counsel did nothing to bring the *Keindl* decision, which was issued on November 20, 1986, three months after

the initial brief was filed, to the attention of the Appellate Division. Appellate Counsel was aware of *Keindl* because Grady asked him whether the decision had any bearing on his case. (*See* App. at 22–23.) · But in spite of a number of options, Appellate Counsel remained content to rely on the six grounds already briefed and submitted, electing not to request permission to file a supplemental brief. After Grady's conviction was affirmed, Appellate Counsel chose not to request reargument or rehearing either, an avenue open under CPL § 470.50.[10]

Appellate Counsel persisted in avoiding the duplicity issue and the *Keindl* case in his request for leave to appeal to the Court of Appeals. While one of the two letters Appellate Counsel submitted did include an ambiguous reference to an unnamed recent decision of the Court of Appeals regarding an issue not raised on Grady's direct appeal, that hint appears in a paragraph discussing lack of specificity, not duplicity.

The first letter, dated December 19, 1986, concluded with the following paragraph, which the Respondent contends was a reference to *Keindl:*

At trial, counsel for Reverend Grady, Mr. Arnold Roseman, also objected vehemently to the lack of specificity in the indictment as to the dates; times; alleged frequency of attacks, etc. This feature of the indictment made it impossible for the defendant to establish a well-grounded and substantial alibi defense. While defendant testified that he was away from the church/day care center frequently during the months raised in the indictment, he was unable to show that he was absent from the center when the alleged assaults took place because the People never indicated when they transpired. This substantially denied defendant's right to confront witnesses against him and establish a defense. While we did not raise this issue on appeal,

---

10. The Respondent's argument that supplemental briefs are strongly discouraged under the rules of the Appellate Division, First Department is unavailing. Requesting permission to file supplemental briefs on the basis of intervening authority from the Court of Appeals is entirely appropriate under the rules, *see* N.Y.Comp.Codes R. & Regs. tit. 22, § 500.11(g), and is not doomed to be denied. *See, e.g., People v. Fratta,* 83 N.Y.2d 771, 772, 610 N.Y.S.2d 947, 947, 632 N.E.2d 1270, 1270 (1994); *People v. Brown,* 140 A.D.2d 266, 267, 528 N.Y.S.2d 565, 566 (1st Dep't 1988).

a recent decision of this Court adds considerable urgency to it and we believe it is fully perfected through the record made by Mr. Roseman at trial.

(Valle Aff., Ex. 1.) The remainder of the first letter reiterates the six issues argued on Grady's direct appeal to the Appellate Division.

The second letter, dated January 5, 1987, requests oral argument and refers only to the six issues presented on Grady's direct appeal. There is no mention of *Keindl* or even a reference to the indictment or bills of particulars. (*See* Valle Aff., Ex. 1.) The first letter, which included the possible reference to *Keindl*,[11] was dated only fifteen days after the First Department affirmed Grady's conviction—well within the thirty days allotted for a motion to reargue or reconsider the appeal. *See* N.Y.Comp.Codes R. & Regs., tit. 22, § 600.14(a).

Indeed, when Grady later petitioned to vacate his sentence, Justice Fried called the failure to have raised and preserved the duplicity issue on appeal "unjustifiable" and barred collateral review of that issue on procedural grounds pursuant to CPL § 440.10. *See People v. Grady,* N.Y.L.J., Apr. 16, 1991, at 24 (N.Y.Sup.Ct., Bronx Co. Apr. 16, 1991).

### D.

■ Based on all of the foregoing, the Court finds that Appellate Counsel's omission of the duplicity issue in favor of the six grounds which were asserted on Grady's appeal constituted legal representation which fell below an objective standard of reasonableness and was therefore deficient. At the time of the appeal there was a statutory prohibition against duplicitous indictments. Grady's indictment, as supplemented by the People's bill of particulars as amended, appears to charge rape, sodomy, and sexual abuse crimes as continuous offenses occurring over one- and two-month periods. Furthermore, both the grand jury and trial testimony were indeterminate with respect to the number of offenses Grady allegedly perpetrated against each child. Indeed, much of the expert psychological testimony related to behaviors adopted in response to systematic and repeated sexual abuse. Even with the People's explanation of the phrase "continuous course of conduct" there is a persuasive argument that Grady's indictment charged sexual offenses as continuing crimes.

The case law at the time of the appeal supported a persuasive argument that the continuing offense doctrine was not applicable to rape, sodomy, or sexual abuse in the context of duplicity. In fact, even now the Respondent does not contend that the indictment as amplified by the bill of particulars as amended was not duplicitous or that the People's clarification about the meaning of "continuous course of conduct" or the ultimate testimony by the children before the grand jury or during trial would have defeated such a challenge had it been made on direct appeal. Instead the Respondent argues principally that the case law was at best unclear at the time, relying on *Yonko* and *Barlow,* and that "it was reasonable to believe that the New York Court of Appeals viewed repeated acts of sex abuse of children as a continuous crime." (Resp. Br. at 28.) This position stands in stark contrast to the People's denials of such a position at the time the bill of particulars was provided:

> Appellant's further claim that the indictment is duplicitous because the Bill of Particulars alleges that all of the acts committed were done so in an ongoing course of conduct is similarly without merit. Indeed, *despite the fact* that there is strong authority that repeated acts of sexual molestation may be regarded as one continuous crime [citing *Yonko* and *Barlow*], *the People do not intend,* by use of the phrase, "continuous course of conduct" to suggest that defendant is now being charged with

---

11. The Respondent argues that the reference in the first letter must have been to *Keindl* and that Grady was well served by his lawyer by having that case raised in this manner. It is equally conceivable that Appellate Counsel included the paragraph regarding specificity because Grady had prodded him once more about the usefulness of *Keindl* to his case. (*See* App. at 22–23; Mem. of L. in Supp. of Pet. at 22–23.) Whatever the reason, it remains clear that the letter demonstrates Appellate Counsel was aware of the existence of *Keindl* and yet made no effort to alert the Court of Appeals to the specific decision or how it applied to his client's case.

multiple offenses in any one count of the indictment.

(App. at 102 (emphasis added).) Now, however, nearly ten years later, the Respondent relies heavily on *Yonko,* a case concerning sentencing rather than indictment duplicity, and *Barlow,* a case where the issue of duplicity was not squarely presented because of procedural mistakes. Based on these two cases, the Respondent argues that the question of whether rape, sodomy, and sexual abuse were offenses that could be treated as continuing crimes for the purpose of surviving the statutory prohibition against duplicity was an unsettled question. But the greater weight of authority, including cases such as *MacAfee* and *Faux* presenting more analogous circumstances to Grady's case, support the view that such crimes, even when perpetrated against one's children, are not continuing offenses. Even before the decision in *Keindl,* the duplicity issue held profoundly more promise than any of the six grounds for appeal presented in Appellate Counsel's eighty-four page brief—so much so that the failure to even raise it in favor of six far less favorable and far more elaborate arguments was not objectively reasonable legal representation.

#### E.

In addition, while it was objectively unreasonable to have omitted the duplicity issue on appeal even before *Keindl,* this Court also finds that Appellate Counsel's inaction in the aftermath of *Keindl* constituted another clear instance of deficient legal performance. *Keindl* was a decision by the highest court of the state in a case involving the propriety of an indictment charging multiple counts of sodomy and sexual abuse against three young children—subject matter that cries out for examination by a lawyer handling the appeal of a man convicted of strikingly similar crimes. Moreover, the decision is a *reversal* of part of an affirmed conviction based on a duplicitous indictment, circumstances of acute interest to a lawyer arguing for a person convicted of similar crimes. Finally, the opinion contains the following holding: "Although the 'continuing crime' theory may be appropriately applied in the proper case, it has no applicability here as to the crimes of

sodomy and sexual abuse of which this defendant has been convicted." *Keindl,* 68 N.Y.2d at 420, 509 N.Y.S.2d at 795, 502 N.E.2d at 582. For Appellate Counsel to have ignored such a clear pronouncement by the New York Court of Appeals relating directly to the circumstances of Grady's case is manifestly deficient performance. The failure to have argued duplicity after *Keindl* was not objectively reasonable. Indeed, it was inexcusable.

The Respondent argues that *Keindl* did not receive great fanfare when rendered and Appellate Counsel may not even have been aware of the case. The Respondent pushes aside Grady's own affidavit, (*see* App. at 22–23), attesting that he informed his counsel of the *Keindl* opinion both before the Appellate Division affirmed his conviction and before Appellate Counsel drafted letters seeking leave to appeal to the Court of Appeals. Yet, the Respondent also praises Appellate Counsel for having raised *Keindl,* at least indirectly in one of those very letters, arguing paradoxically that Appellate Counsel advised the Court of Appeals about a little known case of which he was unaware. These arguments fall of their own weight.

The inclusion of the possible reference to *Keindl* in the first letter to the Court of Appeals, albeit not by name and in support of an inapt proposition regarding specificity, gives credence to Grady's own assertion that he made his counsel aware of *Keindl.* In any event, whether Appellate Counsel was aware of *Keindl* and chose to ignore it, or was unaware of it altogether, in an objective sense his performance remains deficient in light of the indisputable application of *Keindl* to Grady's case and the relative merit of the duplicity argument when compared to the six issues Appellate Counsel did argue on appeal.

The Respondent then argues that the true import of *Keindl* and its application to Grady's case was unclear when the opinion was issued. This argument cannot be reconciled with the decisive language of the *Keindl* opinion itself. In the Respondent's view, *Keindl* turned on the ages of the victims and could have been "fairly read to forecast that

indictments applying a continuous crime theory *would remain appropriate* in cases involving victims too young 'to parse the various acts within the time spans with more specificity.' " (Resp. Br. at 31 (citing *Keindl*, 68 N.Y.2d at 421, 509 N.Y.S.2d at 795, 502 N.E.2d at 582).) While the court in *Keindl* noted the ages of the children, particularly in distinguishing *Morris* on the issue of lack of specificity under CPL § 200.50, the holding with respect to sodomy and sexual abuse being single acts and not continuing crimes did not depend on the ages of the victims. And although the court observed that there did not appear to have been any necessity in the circumstances of the *Keindl* case "for the profusion of duplicitous counts" in the indictment, it did not suggest that it would be acceptable to violate CPL § 200.30 with a duplicitous indictment if the victims were younger. *See Keindl*, 68 N.Y.2d at 420–21, 509 N.Y.S.2d at 794–95, 502 N.E.2d at 582–83.

The Respondent argues further that the uncertainty of *Keindl* was dispelled in the later case of *People v. Beauchamp*, 74 N.Y.2d 639, 641, 541 N.Y.S.2d 977, 539 N.E.2d 1105 (1989), another case involving the conviction of a teacher from a day care center, where the New York Court of Appeals corrected the Appellate Division, First Department, in a child sexual abuse case involving a three-year-old. The Respondent suggests that the fact that the Appellate Division evidently misapplied *Keindl* demonstrates that *Keindl*'s precise holding was as yet unclear. This argument contains two flaws.

■ First, it is improper to consider later developments in the law when considering whether counsel's actions were within the bounds of objectively reasonable legal representation. At the time of Grady's appeal, the *Beauchamp* case was as yet undecided by either the Court of Appeals or the Appellate Division. Therefore, whatever value those decisions may have is irrelevant to the issue of what was reasonable in late 1986. *See Fretwell*, 506 U.S. at 371, 113 S.Ct. at 844 ("to determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to 'judge ... counsel's challenged conduct on the facts

of the particular case, viewed as of the time of counsel's conduct.' " (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066)); *Jameson*, 22 F.3d at 429 (evaluating counsel's performance as of time of appeal notwithstanding later cases); *Mayo*, 13 F.3d at 533–34 (in assessing performance, reviewing court may not use hindsight to second-guess counsel's strategy choices).

Second, in any event, the Respondent's view of the *Beauchamp* opinions is incorrect. In the Appellate Division decision the court held that all but three counts of the indictment were duplicitous under CPL § 200.30 and *Keindl*. *See Beauchamp*, 143 A.D.2d 13, 532 N.Y.S.2d 111 (1st Dep't 1988). Three counts survived challenge, however, because each count charged a single instance of rape, sodomy, and sexual abuse, respectively, and the trial testimony confirmed that only one act allegedly occurred. *Id.*, 143 A.D.2d at 16, 532 N.Y.S.2d at 114. It was on this last point that the Court of Appeals disagreed, holding unanimously that the nonduplicitous trial testimony could not cure the defect in the People's bill of particulars which specifically alleged that the defendant had engaged in a continuous course of conduct over a period of several months. *Id.*, 74 N.Y.2d at 640–41, 541 N.Y.S.2d at 978, 539 N.E.2d at 1105–06. Accordingly, the *Beauchamp* decisions reveal that a duplicity defect rooted in an indictment and bill of particulars cannot be cured by trial testimony establishing that each count encompassed a single act. The Appellate Division did not find that the ages of the children would cure an otherwise duplicitous indictment. And, at the end of the appellate process, all of the counts in the *Beauchamp* indictment had been dismissed on the grounds of duplicity even though they related to children of very young age.

■ Coming as it did two years after Grady's appeal was filed, *Beauchamp* does nothing to justify or rationalize Appellate Counsel's failure to raise with the Appellate Division, or the Court of Appeals, a decision by the highest court of the state relating directly to his client's case. Although a lawyer need not be prescient with respect to new developments or dramatic shifts in the law, *see Lilly v. Gilmore*, 988 F.2d 783, 786

(7th Cir.), *cert. denied,* 510 U.S. 852, 114 S.Ct. 154, 126 L.Ed.2d 116 (1993); *United States ex rel. Roche v. Scully,* 739 F.2d 739, 742–44 (2d Cir.1984), it is a lawyer's duty to argue for the application of current law if that law supports his client's interests. And there can be no doubt that in Grady's case attacking the indictment and bill of particulars as duplicitous was an approach that was firmly grounded in the statute and case law, supported by the factual circumstances of the prosecution, and significantly more likely to prevail than the arguments on which Grady's appeal was in fact based. Failure to have raised the issue was objectively unreasonable and fell well beyond the wide range of professionally competent legal assistance.

Accordingly, the deficient performance prong under *Strickland* is satisfied.

### V.

■ The second prong of the *Strickland* test is straightforward, particularly because this test may be met by considering events subsequent to the filing of the appeal. *See Fretwell,* 506 U.S. at 372, 113 S.Ct. at 844 (prejudice component of *Strickland* does not implicate concerns which make hindsight inappropriate for determining deficient performance); *Mayo,* 13 F.3d at 534 ("The outcome determination, unlike the performance determination, may be made with the benefit of hindsight."). As explained above, the duplicity issue was meritorious and omitted by Appellate Counsel in favor of six less persuasive arguments, none of which succeeded. On the other hand, had the duplicity argument been raised successfully, Grady's conviction would have been reversed entirely and the indictment dismissed. The prospect of such a favorable outcome was appreciable at that time given the state of the law then. At this time, the likelihood of success on appeal is undeniable given the number of intervening cases involving sex offenses in which the duplicity argument prevailed. *See, e.g., Beauchamp,* 74 N.Y.2d 639, 541 N.Y.S.2d 977, 539 N.E.2d 1105; *People v. Jelinek,* — A.D.2d ——, 638 N.Y.S.2d 731 (2d Dep't 1996); *People v. Vogt,* 172 A.D.2d 864, 569 N.Y.S.2d 461 (2d Dep't 1991); *People v. Corrado,* 161 A.D.2d 658, 556 N.Y.S.2d 95 (2d Dep't 1990); *People v. Algarin,* 166 A.D.2d 287, 560 N.Y.S.2d 771 (1st Dep't 1990); *People v. Romero,* 147 A.D.2d 358, 537 N.Y.S.2d 523 (1st Dep't 1989); *People v. Tolle,* 144 A.D.2d 963, 534 N.Y.S.2d 271 (4th Dep't 1988), *appeal denied,* 73 N.Y.2d 927, 539 N.Y.S.2d 311, 536 N.E.2d 640 (1989); *People v. Lesser,* 203 N.Y.L.J. 75, at 27 (Sup.Ct. N.Y.Co. Apr. 19, 1990); *People v. Rios,* 142 Misc.2d 357, 537 N.Y.S.2d 775 (N.Y.City Crim.Ct.Bronx Co.1989). And this likelihood was sufficiently high even prior to *Keindl* given the state of the case law from the Appellate Division. *See Mayo,* 13 F.3d at 534 ("We have ruled that the fact that the omitted claim involved a right that had not yet explicitly been recognized by the state's highest court does not preclude such a finding [of prejudice]." (citing *Claudio,* 982 F.2d at 803)).

Given the success of the duplicity argument in these similar cases, it is plain that there is a reasonable probability that had Grady's counsel asserted such a claim on his direct appeal, the "result of the proceeding would have been different." *Bunkley,* 68 F.3d at 1521 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068). Accordingly, the prejudice prong of the *Strickland* test is easily satisfied in this case.

### VI.

Both parts of the *Strickland* test are satisfied on this petition. Appellate Counsel's failure to raise the claim of duplicity of the indictment on Grady's direct appeal and his failure to take advantage of the *Keindl* decision either before the Appellate Division or the Court of Appeals was deficient performance below an objectively reasonably standard of legal performance. And Grady was prejudiced by that failure.

■ There remains the question of appropriate relief. In a case based on ineffective assistance of appellate counsel, the petitioner is entitled to a new appeal rather than a new trial. The Court has broad discretion to fashion appropriate habeas relief, *see* 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require."), and that discretion includes conditionally granting the writ to permit the petitioner to pursue another appeal. *See Hilton*

*v. Braunskill,* 481 U.S. 770, 775, 107 S.Ct. 2113, 2118, 95 L.Ed.2d 724 (1987) ("In construing § 2243 and its predecessors, this Court has repeatedly stated that federal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court."); *Mayo,* 13 F.3d at 537 (affirming grant of writ conditioned on petitioner being afforded opportunity to present his appeal as if timely and properly presented, or alternatively afforded a new trial); *Claudio,* 982 F.2d at 806 (remanding with instructions to grant writ unless petitioner permitted to present omitted ground for appeal to Court of Appeals); *Harris v. Kuhlman,* 601 F.Supp. 987, 994 (E.D.N.Y.1985) (ordering successful petitioner released unless his new appeal was decided within sixty days and staying the decision pending appeal to the Court of Appeals).

 Accordingly, this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is conditionally granted. The writ will be granted if Grady is not permitted to appeal his conviction and present his claim based on duplicity under CPL § 200.30 to the Appellate Division within sixty (60) days from the date of this Opinion and Order.[12] Because these conditions permit the Respondent sufficient time to consider an appeal of this decision, including any application for a stay to the Court of Appeals, there is no need to stay this conditional grant pending appeal.

### CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **granted** unless the petitioner is permitted to appeal his conviction and present his claim based on duplicity under CPL § 200.30 to the Appellate Division within sixty (60) days of the date of this Opinion and Order.

**SO ORDERED.**

---

**12.** By letter to the Court dated January 31, 1996, Grady made an application for bail pending determination of this petition. The Respondent responded by letter dated February 7, 1996, opposing bail. Because there is now a determination on the merits, the petitioner's application for bail is **denied as moot.**